CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

5/3/19

JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **ADAM ARMSTRONG**, and **PRIMETIME VACATION SPECIALS, LLC**, <br><br> Plaintiffs, <br><br> v. <br><br> **HADLEGAL SERVICES, LLC**, <br>    Serve: Glen Hadley, Registered Agent <br>        1641 E. Osborn Road <br>        Phoenix, Arizona 85016 <br><br> **MARK SALZMAN**, <br>    Serve: 6505 E Sunnyside Drive <br>        Scottsdale, Arizona 85254 <br><br> Defendants. | Case No: 5:19cv00038 |

## COMPLAINT

Plaintiffs, Adam Armstrong ("Armstrong") and Primetime Vacation Specials, LLC ("PVS") (collectively, "Plaintiffs"), by their undersigned attorneys, for their Complaint against Defendant Hadlegal Services, LLC ("Hadlegal") and Defendant Mark Salzman ("Salzman"), (collectively, "Defendants"), allege, based upon personal knowledge as for themselves, and upon information and belief as to others, as follows:

### NATURE OF THE ACTION

1. This is an action for breach of contract, conversion, unjust enrichment, constructive trust, accounting in equity, breach of fiduciary duty, and violations of the Virginia Computer Crimes Act, Virginia Code § 18.2-152.1.

## THE PARTIES

2. Armstrong is a consultant to PVS and a resident of Harrisonburg, Virginia. He conducts business on behalf of PVS in Virginia.

3. PVS is a limited liability company duly organized and existing under the laws of Wyoming. Its managing member, Chris Gittens ("Gittens"), lives in Waynesboro, Virginia. PVS is in the business of selling vacation or travel club memberships. PVS is a registered foreign company with the Virginia State Corporation Commission and regularly conducts business dealings in the Commonwealth.

4. Hadlegal is a limited liability company duly organized and existing under the laws of Arizona, with its principal place of business in Arizona. Hadlegal acts as a settlement service to process the credit card transactions between the sales organization (PVS) and the customer. Although not registered with the Virginia State Corporation Commission, Hadlegal conducts extensive business in the Commonwealth.

5. Salzman is Hadlegal's owner and/or managing member and acts as the primary point of contact for Hadlegal. In that capacity, Salzman regularly conducts business in the Commonwealth. Salzman is a resident of Scottsdale, Arizona.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

7. This Court has personal jurisdiction over Armstrong as he is a resident of the Commonwealth of Virginia.

8. This Court has personal jurisdiction over PVS as it is a foreign entity authorized to operate and which does, in fact, operate in the Commonwealth of Virginia.

9. This Court has personal jurisdiction over Defendants because Defendants conduct ongoing and continuous business in Virginia. Defendants have engaged in business dealings with Virginia residents, including but not limited to Armstrong, and by routinely sending money into the state. Defendants have purposefully directed their business activities toward Virginia, including by soliciting business from Armstrong. In addition, Defendants have caused harm to Plaintiffs in Virginia. Through such conduct, Defendants have purposefully availed themselves of the privileges of conducting business in Virginia, and, when engaging in such conduct, it was reasonably foreseeable that Defendants would be subjected to this Court's jurisdiction

10. Venue in this Court is proper under 28 U.S.C. § 1391 (b) and (c) in that Armstrong resides in this District; Defendants are subject to personal jurisdiction in this District; and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

11. Armstrong is a consultant who manages, trains, and oversees the sale by others of memberships in vacation or travel clubs. These memberships provide the purchaser discounted travel at various locations, including destinations in Virginia. Armstrong primarily consults for PVS.

12. Gittens is the primary operator of PVS. He and Armstrong meet frequently in Virginia to strategize and coordinate business. In addition, PVS has two other employees who live in Virginia.

13. Gittens, Armstrong and his sales team engage in meetings, trainings, and events in Harrisonburg and surrounding areas, and throughout Virginia and other parts of the United States.

14. PVS utilizes a company in Virginia to handle its gift certificates, which are a large part of its sales incentive program.

15.     When a purchase occurs, Armstrong and PVS utilize Hadlegal to act as an escrow agent and settlement service to process the credit card transaction. Hadlegal will process the credit card purchase, which accounts for approximately 90% or more of all such payments, and hold the funds in escrow during the required rescission period according to the State in which the transaction occurred. As compensation for its services, Hadlegal takes a percentage of each transaction amount in addition to a flat escrow fee.

16.     During some transactions, a consumer will raise an issue with the gift certificate it received as a sales incentive.  In those instances, Salzman or someone else at Hadlegal would interface directly with the Virginia company that handles the gift certificates in an effort to resolve the issue.

17.     Occasionally, a charge is disputed or canceled. While the dispute is pending, the funds are held in escrow by Hadlegal. If the consumer "wins" the dispute, the funds are refunded. If the seller (here PVS) "wins" the dispute, the funds are paid to the seller in the normal course of business. Historically, the seller "wins" approximately 90% of such chargeback disputes. As such, it is common for escrow agents like Hadlegal to require a small reserve account to cover these chargebacks. These reserve accounts are typically created by the deduction of a small percentage of each sale until the required reserve amount is reached.  These funds should be held in a separate bank account.

18.     Upon information and belief, Hadlegal did not keep these reserve funds in a separate bank account.  Moreover, as time passed, Hadlegal and Salzman would hold chargebacks longer and longer. In addition, the chargeback disputes would allegedly go to arbitration more often and funds were held longer before refunded. Further, decisions on wins or loses took longer and longer to be communicated to Plaintiffs by Defendants.

19. In its capacity as an escrow agent, Hadlegal owed Plaintiffs a fiduciary duty--as did Salzman by virtue of his control of Hadlegal--to act with scrupulous honesty, skill, and diligence and to exercise reasonable skill and due care.

20. Armstrong had done business with Salzman and Hadlegal since approximately 2011. At all times relevant herein, Armstrong worked out of his home in Harrisonburg, Virginia.

21. Over this period of time, Armstrong would communicate frequently with Salzman and Hadlegal. On several occasions, Salzman or other representatives of Hadlegal came to Virginia in person. Armstrong and eventually PVS also used a local bank in Harrisonburg, Virginia for all transactions with Defendants. At all relevant times, all banking for PVS was based in Virginia. On occasion, PVS's bank in Virginia would need to communicate directly with Hadlegal.

22. In October 2016, Armstrong began consulting with PVS and PVS wanted to use Hadlegal's services.

23. Armstrong agreed to transfer a reserve account he personally acquired in the amount of approximately $117,716.78 to Hadlegal for the benefit of PVS. Hadlegal agreed to use this reserve account solely to cover PVS's sales transactions, which were largely - if not entirely - generated by Armstrong's team. Armstrong was assured that a reserve account in this approximate amount was all that would ever be required for PVS. Indeed, that was the approximate amount of the reserve account he had had with Defendants since 2011. The reserve account was to be used only for disputes/chargebacks related to PVS's business and no other purpose.

24. Business commenced between Armstrong, PVS, Hadlegal and Salzman without incident. Gittens, on behalf of PVS, interacted with Hadlegal at least a few times a month. PVS's payroll coordinator, who lives in Virginia, would frequently communicate with Hadlegal to confirm canceled deals, chargebacks, potential funding reports and commissions, etc. PVS's

payroll emanates out of and is processed in Virginia. Another PVS employee, who also lives in Virginia and handles merchant account transactions, would often interact with Salzman or other employees of Hadlegal regarding those matters.

25. One of the Hadlegal employees that Armstrong and PVS would frequently communicate with is Candace Ng, who, upon information and belief, serves as Hadlegal's accountant. Ms. Ng has detailed information about the finances of Hadlegal.

26. In the summer of 2018, Salzman began showing signs of personal financial strain and bad decision-making, including the firing of a key employee at Hadlegal. Mistakes on the part of Hadlegal ensued and PVS and Armstrong were getting concerned and frustrated.

27. Then, in the early fall of 2018, Salzman informed Plaintiffs that the bank was allegedly requiring a $50,000.00 increase in the PVS reserve account. Plaintiffs believe this statement was false; that Salzman knew it was false at the time he made it; and that Salzman made the statement solely for the purpose of defrauding PVS. At that time, Plaintiffs requested proof of the bank's requirement, but none was provided.

28. Without PVS's approval or consent, Defendants withheld a lump sum of $50,000.00 from proceeds due to PVS. Assuming *arguendo* that an increase in the reserve account was actually warranted and had been approved by Plaintiffs - both of which are denied--retaining a lump sum was against industry standard of building a reserve by taking a percentage of each sale.

29. This conduct lacked scrupulous honesty, skill, and diligence and was a failure to exercise reasonable skill and due care.

30. At this juncture, the reserve account now held or should have held approximately $167,716.78 -- $117,716.78 belonging to Armstrong personally and $50,000.00 belonging to PVS.

31. In December 2018, Salzman asked Armstrong for a personal loan in the amount of $150,000.00. He told Armstrong that two other business ventures he had invested in were failing. During communications that ensued in the following weeks, Salzman expressed displeasure with Armstrong's requested terms for such a loan.

32. At that time, Defendants coincidentally stopped fully funding PVS the monies it was owed. This conduct lacked scrupulous honesty, skill, and diligence and was a failure to exercise reasonable skill and due care.

33. On December 26, 2018, Salzman advised Plaintiffs that the bank was now allegedly requiring an additional $150,000.00 in its reserve account. Interestingly, this was the same amount Salzman had requested for his personal loan. Plaintiffs believe this statement was false; that Salzman knew it was false at the time he made it; and that Salzman made the statement solely for the purpose of defrauding PVS to obtain the sum he previously sought to borrow. Again, Plaintiffs requested proof from the bank, but none was provided.

34. Again, without PVS's consent or approval, Defendants withheld the entire amount ($150,000.00) instead of funding PVS in due course. Assuming arguendo that an increase in the reserve account was actually warranted and had been approved by Plaintiffs--both of which are denied--retaining a lump sum was against industry standard of building a reserve by taking a percentage of each sale.

35. This conduct lacked scrupulous honesty, skill, and diligence and was a failure to exercise reasonable skill and due care.

36. When Armstrong discussed this inappropriate conduct with Salzman and demanded return of the funds, Salzman responded that he and Hadlegal were keeping the money even if PVS

stopped doing business with them and even though he knew he would get a legal demand for the funds.

37. As of December 31, 2018 - and currently - the amount in the reserve account is or should be approximately $317,716.78, which belongs to Armstrong ($117,716.78) and PVS ($200,000.00).

38. Finally, Hadlegal has failed to refund PVS for the chargeback disputes that it "won." In addition, upon information and belief, Hadlegal and Salzman have lied about certain disputes - claiming that PVS lost the dispute when it actually won it and then keeping the money for themselves. Over the past two years, PVS coincidentally saw the percentage of chargeback disputes it "won" drop from approximately 90% to 70% - at least according to Salzman and Hadlegal. Further, upon information and belief, Salzman and Hadlegal would falsely claim that a chargeback dispute went to arbitration so that they could charge PVS an additional fee. Upon information and belief, Candace Ng has knowledge about these nefarious actions.

39. As such, Hadlegal is holding or otherwise owes PVS at least another One-Hundred-Fifty-Thousand and 00/100's ($150,000.00) in chargeback related refunds and fees.

40. Upon information and believe, Salzman used some or all of the reserve account money for his own personal benefit and/or for improper purposes.

41. In late January 2019, Plaintiffs stopped doing business with Defendants. Despite demand for return of the funds upon Hadlegal and Salzman, no funds have been refunded or paid to PVS or Armstrong.

42. All actions taken by Salzman individually and on behalf of Hadlegal were done intentionally, maliciously and with the intent to cause damages to Plaintiffs.

43. Salzman and Hadlegal consciously disregarded Plaintiffs' property rights and Defendants' actions and inactions were reckless and egregious.

## COUNT I
## **BREACH OF CONTRACT**
(Against Defendant Hadlegal)

44. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

45. Plaintiffs had an oral contract with Hadlegal for it to act as an escrow settlement agent, to appropriately handle chargeback disputes, and to separate and only use the reserve account solely for PVS's sales transactions.

46. PVS and Armstrong are no longer doing business with Hadlegal.

47. Despite demand, Hadlegal has not returned any of the funds held in the reserve account and/or otherwise due to Plaintiffs.

48. Upon information and belief, Hadlegal failed to ever maintain a separate bank account for the reserve funds and has used funds in the reserve account for purposes other than PVS's sales transactions.

49. Hadlegal has failed to refund PVS for the chargeback disputes that it "won" and has, upon information and belief, inappropriately handled chargeback disputes and improperly assessed fees to PVS resulting in damages to PVS.

50. Hadlegal has materially breached the oral contract.

51. As a direct and proximate result of Hadlegal's breach of contract, Plaintiffs have collectively suffered damages in the amount of at least $467,716.78, plus interest and costs.

## COUNT II
## CONVERSION
(Against Both Defendants)

52. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

53. Defendants made improper withdrawals from PVS funds without the permission, knowledge, or authority of PVS.

54. Defendants have failed to refund the reserve account, which belongs to PVS ($200,000.00) and Armstrong ($117,716.78), despite demand for same.

55. Defendants have failed to pay PVS for the chargeback disputes that it "won." Defendants, upon information and belief, have lied about certain disputes - claiming that PVS lost the dispute when they actually won it and then keeping the money for themselves - and have falsely claimed that a chargeback dispute went to arbitration so that they could charge PVS an additional fee. Upon information and belief, Plaintiffs have been damaged in the amount of at least $150,000.00 as a result of these actions.

56. Defendants have misappropriated at least Four-Hundred-Sixty-Seven-Thousand Seven-Hundred-Sixteen and 78/100's Dollars ($467,716.78) from Plaintiffs for their own benefit.

57. Defendants' actions deprived Plaintiffs of money which is rightfully theirs. Their conduct was intentional, egregious, malicious and reckless.

58. Defendants' actions constitute conversion of the assets of PVS and Armstrong.

## COUNT III
## BREACH OF FIDUCIARY DUTIES
(Against Both Defendants)

59. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

60. As an escrow agent and as the party controlling it, Hadlegal and Salzman owed, and continue to owe, the fiduciary duties of loyalty and care to Plaintiffs. These duties include acting with scrupulous honesty, skill, and diligence and exercising reasonable skill and due care.

61. Defendants have violated, and continue to violate, their fiduciary duties of loyalty and care by harming Plaintiffs through their unauthorized withdrawals, withholding, and retention of the reserve account and other funds which benefit Defendants to the detriment of Plaintiffs. Upon information and belief, Defendants never maintained a separate bank account for the reserve funds and inappropriately handled chargeback disputes.

62. Defendants' actions deprived Plaintiffs of money which is rightfully theirs. Their conduct was intentional, egregious, malicious and reckless.

## COUNT IV
## UNJUST ENRICHMENT
(Against Both Defendants)

63. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

64. Defendants have been unjustly enriched by taking funds from PVS and Armstrong for their own benefit and to the detriment of PVS and Armstrong.

65. Defendants were aware of the benefit conferred upon them by the taking of the funds which inured solely to their benefit.

66. Defendants retained the benefit of the funds for their own use and enjoyment.

67. Defendants would be unjustly enriched if permitted to retain the benefit of the funds they unlawfully withheld from PVS and Armstrong, in an amount no less than $467,716.78.

## COUNT V
## **CONSTRUCTIVE TRUST**
(Against Both Defendants)

68. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

69. In conjunction with Count IV of this Complaint (Unjust Enrichment), the funds that Defendants unlawfully took from PVS and Armstrong, as well as any property derived therefrom, should be held in a constructive trust for the benefit of PVS and Armstrong.

70. The facts and circumstances require a declaration that a constructive trust exists effective from at least September 14, 2018, as a matter of equity and in order to prevent a failure of justice.

71. It is necessary, equitable, and appropriate that this Court impose a constructive trust for the benefit of PVS and Armstrong in order to prevent the injustice that would otherwise ensue.

## COUNT VI
## **ACCOUNTING IN EQUITY**
(Against Both Defendants)

72. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

73. Defendants have improperly withheld and kept funds from PVS and Armstrong for their own benefit and to the detriment of PVS and Armstrong.

74. As a result, Plaintiffs request payment or surrender by Defendants of all funds in the reserve account, chargeback account, and otherwise due and payable to Plaintiffs.

75. In addition, Plaintiffs request that Defendants produce an accounting in equity as to all funds and/or other property coming into their hands and as otherwise allowed pursuant to Virginia Code § 8.01-31.

76. In addition, and without limitation, Plaintiffs request an accounting in equity, and access to, the reserve account(s), chargeback account, and any other account referenced above in this Complaint or otherwise utilized in any way in relation to Plaintiffs.

## COUNT VII
## VIOLATION OF THE VIRGINIA COMPUTER CRIMES ACT
(Virginia Code § 18.2-152.1)(Against Both Defendants)

77. Plaintiffs repeat and specifically incorporate the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

78. On September 14, 2018, Defendants, under false pretenses and without authority, used servers, computers and/or computer network to withhold and convert funds due and payable to PVS for their own benefit in the amount of $50,000.00.

79. On December 24, 2018, Defendants, under false pretenses and without authority, used servers, computers and/or computer network to withhold and convert funds due and payable to PVS for their own benefit in the amount of $150,000.00.

80. Defendants' conduct has caused and will continue to cause damage to Plaintiffs and to Plaintiffs' business, and Plaintiffs are entitled to the relief provided in Va. Code § 18.2-152.12, including direct and consequential damages, in an amount to be determined at trial, and the costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Armstrong and PVS pray that this Court enter judgment in their favor against Defendants as follows:

A. That this Court award judgment to Plaintiff Armstrong against Defendants in the amount of at least One-Hundred-Seventeen-Thousand Seven-Hundred-Sixteen and 78/100's Dollars ($117,716.78), plus pre- and post-judgment interest;

B. That this Court award judgment to Plaintiff PVS against Defendants in the amount of at least Three-Hundred-Fifty-Thousand and 00/100's Dollars ($350,000.00), plus pre- and post-judgment interest;

C. That this Court impose a constructive trust on the funds that Defendants unlawfully withheld and retained from Armstrong & PVS as well as any property derived therefrom;

D. That this Court cause Defendants to provide an accounting pursuant to Count VI of this Complaint;

E. That this Court award Punitive Damages on Counts II, III and IV in amounts to be determined at trial;

F. That this Court award Plaintiffs pre-judgment and post-judgment interest on any damage award, plus its costs, expenses and attorneys' fees from maintaining this action; and

G. That this Court award Plaintiffs such other and further relief the Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby requests a trial by jury on all matters and issues triable by a jury.

Dated: May 3, 2019                                Respectfully Submitted,

                                                       /s/  Wyatt B. Durrette, Jr.
Wyatt B. Durrette, Jr., Esquire (VSB No. 04719)
Christine A. Williams, Esquire (VSB No. 47074)
DURRETTE, ARKEMA, GERSON & GILL PC
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Tel: 804-775-6900
Fax: 804-775-6911
wdurrette@dagglaw.com
cwilliams@dagglaw.com
*Counsel for Plaintiffs Adam Armstrong and Primetime Vacation Specials, LLC*